UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-20390-CR-WILLIAMS

UNITED STATES OF AMERICA

vs.

JESUS ROJAS,

                    **Defendant.**

_____/

## STIPULATED FACTUAL PROFFER

If this matter were to proceed to trial, the Government would prove the stated facts beyond a reasonable doubt. The Parties agree that these facts, which do not include all facts known to the Government and the Defendant, are sufficient to prove the Defendant's guilt for Conspiracy to Offer and Pay Illegal Kickbacks in violation of Title 18, United States Code, Sections 371 and Title 42, United States Code, Section 1320a-7b(b)(2)(B).

As charged in the Indictment, from in or around February 2018, and continuing through in or around May 2023, in the Southern District of Florida, and elsewhere, the Defendant JESUS ROJAS did willfully, that is, with the intent to further the objects of the conspiracy, conspire and agree with Individual 1, JOSE DAVILA NUNEZ, and LUIS ALBERTO RIVERO to offer and pay illegal kickbacks and bribes for Medicaid recipients to attend three clinics to receive PSR services. Larkin Behavior Health, Inc. received a total of approximately $1,251,463 for PSR services purportedly provided to the recruited Medicaid recipients during that time frame.

**Larkin Behavior**

JESUS ROJAS served as the administrator of one clinic, Larkin Behavior Health, Inc. ("Larkin Behavior") a Florida corporation located at 10550 NW 77th Court, Suite 401 and 402, Hialeah Gardens, Florida.

Larkin Behavior purported to provide medically necessary PSR services (group mental health therapy) to Medicaid recipients that were necessary and appropriate. It was enrolled in the

name of JESUS ROJAS' father, J.R.O. on December 26, 2019. JESUS ROJAS was not eligible to enroll with Medicaid a clinic owner because of his prior felony conviction. In 2019, J.R.O. (age 68 at the time) had no prior experience owning a medical clinic.

### Claims Data and Financial Records

From January 2020 up until July 2022, Medicaid paid Larkin Behavior approximately $1,251,463 for psychosocial rehabilitation services (PSR services) provided to Medicaid recipients. These claims were submitted on behalf of 114 distinct Medicaid recipients. Approximately $499,000 out of the $1,251,463 was billed via "telemedicine" during the pandemic. The remainder of the services were allegedly rendered to recipients "in person" 4 times a week (Monday through Thursday) for 4 hours each day. 78 out of 114 recipients shared a common "diagnosis" of "major depressive disorder" in the Medicaid claims data.

Larkin Behavior was reimbursed a total of at least $1,240,920 related to billed 15-minute increments of group mental health services. The groups could be up to 12 people and were held for 4 hours per day and 4 days per week. In this way, Medicaid would pay approximately $27,648 per month for one therapy group which was led by one therapist.

Some Medicaid recipients would receive as much as $500 per month for attending their 16 hours of therapy per week. $27,648 divided by $6000 yields a kickback percentage of 22%. This is assuming that for every month of treatment of 12 Medicare recipients at each clinic, that each recipient was paid $500. 22% of the total Larkin Behavior received of $1,240,920 is $273,002. Thus, the Government and the defendant jointly agree that the improper benefit in this case is $273,002.

During the conspiracy, a large amount of the Medicaid proceeds were converted to cash in order for co-conspirators to pay kickbacks. For example, between November 2019 and

February 2021, Larkin Behavior's BB&T account ending 2357 showed approximately $158,666 converted to cash.

In 2020, JESUS ROJAS causes Larkin Behavior to make 4 payments to DAVILA's company Max Medical which total approximately $30,950. Between November 2020 and January 2021, Larkin Behavior pays "Luis Rivero Corp." $28,032. In fall 2020, JESUS ROJAS causes the nominee owner, his father J.R.O., to receive $24,700 in 14 separate payments.

The parties agree and stipulate that based on the financial records JESUS ROJAS received, directly and indirectly through companies and family members, at least $229,391 in gross proceeds traceable to the offense.

### Anticipated testimony of Cooperating Witness #1

CW1 successfully recorded calls with DAVILA NUNEZ and conducted recorded meetings with Defendant LUIS ALBERTO RIVERO and with the Defendant JESUS ROJAS. These calls contained discussions of CW1 potentially being paid as a patient recruiter for referring more patients to DAVILA's clinics to receive PSR services.

CW1 tells law enforcement that JESUS ROJAS, phone number 786-602-5637, has a mental health clinic with Luis Alberto Rivero which is by the Palmetto and 41st. CW1 reports that JESUS ROJAS previously ran a clinic controlled by JOSE DAVILA NUNEZ, but that JESUS ROJAS hates DAVILA because DAVILA left him out of the business.

### CW1's February 1, 2022 Controlled Meeting at Larkin with JESUS ROJAS

On February 1, 2022, CW1 records a meeting inside Larkin Behavior. CW1 arranges with LUIS RIVERO to be introduced to JESUS ROJAS. Inside CW1 small talks with other staff and also with another male individual, Target #1 (target of another health care fraud investigation), and finally speaks to JESUS ROJAS about details inside his office.

When CW1 asks how much they pay the patients at Larkin Behavior, JESUS ROJAS

indicates "we do not do it that way anymore, we do it through cards now instead of cash." He explains that these cards can be used for OTC medications and that it is "legal, legal" and he refers to a health insurance called "Bright" that provides incentives to Medicaid recipients. JESUS ROJAS criticizes DAVILA to CW1 saying "this guy has only been here five years, has a big house and a flashy car and attracts a lot of attention." JESUS ROJAS says that DAVILA is the one that law enforcement will go after not a person like him.

CW1 states that DAVILA is "shameless" and that he does not understand why he is not in prison, and ROJAS says it is because DAVILA is a "snitch."

JESUS ROJAS indicates that CW1 can bring patients to Larkin Behavior those patients will receive $200 every treatment cycle. At one point, JESUS ROJAS appears to stare right at the recording device (on a keychain) and then CW1 quickly moves the device to another position. JESUS ROJAS's face is clearly captured on the recordings.

During this February 1, 2022 meeting, agents observed a Black Porsche Cayenne that was registered to JESUS ROJAS parked at Larkin Behavior.

In recorded follow up calls after the meeting, CW1 pushes JESUS ROJAS indicating on February 9, 2022, that other places are paying $600 per month per patient (rather than the $200 per month that ROJAS is offering), and ROJAS essentially responds in Spanish "good for them" they can stick over there and do not need to come here (Larkin Behavior).

In a later call (on February 17, 2022), ROJAS seems more suspicious and is hesitant to talk about the psychologists used in the clinic over the phone and states that CW1 needs to come over to the clinic for them to talk in person.

**Medicaid Recipients Receiving Kickbacks At Larkin**

**Recipient 1:** On or about March 1, 2021, **JESUS ROJAS** caused Medicaid recipient G.F. to receive a cash kickback of approximately $300 in exchange for obtaining PSR services

for four weeks at Larkin Behavior. G.F. identified a photo of therapist M.P. at Larkin Behavior and identified **JESUS ROJAS** as someone that she saw in the office. Larkin Behavior received a total of $13,984 from Medicaid for treating G.F.

**Recipient 2:** On or about April 5, 2021, **JESUS ROJAS** and his co-conspirators caused Medicaid recipient L.T. to receive a cash kickback of approximately $160 in exchange for obtaining PSR services for two weeks at Larkin Behavior. L.T. was paid by a female Llanys (Last name unknown) and another employee. L.T. identified a photo of **JESUS ROJAS** as the owner of Larkin Behavior and advised that he was there every day. Larkin Behavior received a total of $19,600 from Medicaid for treating L.T.

**Recipient 3:** A Medicaid recipient O.P. would testify that she was paid cash, sometimes $200, to attend treatment at Larkin Behavior and she can identify **JESUS ROJAS** as present at that clinic on occasion. Larkin Behavior received a total of $20,176 from Medicaid for treating O.P.

**Recipient 4:** A Medicaid recipient J.A. would testify that he left Davila Medical Center and was recruited by LUIS RIVERO to attend treatment at Larkin Behavior.[1] J.A. indicated that he would receive between $160-$240 per month to attend Larkin Behavior and he identified **JESUS ROJAS** as paying him with a white envelope which contained his weekly cash in a back office on a few occasions. Larkin Behavior received a total of $16,576 from Medicaid for treating J.A.

=**Rendering Providers**

In September 2020, R.C., a rendering provider of treatment in the claims data, told law enforcement that she had no knowledge of DAVILA's other clinic New Behavior and that she

---

[1] On September 30, 2020, Agents conducting surveillance see JESUS ROJAS meeting with DAVILA NUNEZ and LUIS RIVERO at Davila Medical Center at 4315 NW 7th Street, Miami, Florida.

contracted with DAVILA to provide services at Davila Medical Center. When she went to withdraw from DAVILA's clinics, she saw that she had also been linked to Larkin Behavior, a clinic that she never heard about. She tape recorded a call to DAVILA in which DAVILA admitted linking her to Larkin Behavior but claimed that she had consented.

Another rendering provider, A.F., indicated that she only learned that she was linked to Larkin Behavior in May 2020 after checking the Medicaid portal. JESUS ROJAS caused Medicaid to pay $52,288 for services allegedly rendered by therapist A.F.

The Government can also offer Medicaid claims data, bank records, corporate records, witness testimony, and other evidence which supports this factual proffer. This factual proffer is not a recitation of all facts that could be proved if this matter were to proceed to trial but just a recitation of the facts deemed sufficient for this guilty plea.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 4/5/24  By: _____
TIMOTHY J. ABRAHAM
ASSISTANT UNITED STATES ATTORNEY

Date: 4/5/24  By: _____
D'ARSEY HOULIHAN
ATTORNEY FOR THE DEFENDANT

Date: 4/5/24  By: _____
JESUS ROJAS
DEFENDANT