UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-20390-CR-WILLIAMS

UNITED STATES OF AMERICA

vs.

JOSE DAVILA NUNEZ,

                        **Defendant.**
_____/

## STIPULATED FACTUAL PROFFER

If this matter were to proceed to trial, the Government would prove the stated facts beyond a reasonable doubt. The Parties agree that these facts, which do not include all facts known to the Government and the Defendant, are sufficient to prove the Defendant's guilt for Conspiracy to Commit Health Care Fraud in violation of Title 18, United States Code, Sections 1349 and 1347.

### Conspiracy to Commit Health Care Fraud

On or about June 14, 2018, DAVILA directed nominee owner Joel Regino Diaz Martin, to put his name as the sole owner for the clinic New Behavior Health Direction, Inc. ("New Behavior") located at 12963 West Okeechobee Road, Suite 1, Hialeah Gardens, Florida, and to enroll this clinic with a federal health care program, specifically, Medicaid.

| Clinic | Medicaid Payments | Time Period | Owner |
|---|---|---|---|
| New Behavior Health Direction, Inc. ("New Behavior") | $3,869,703 | April 2019 to September 2020 | Joel Regino Diaz Martin |

Law enforcement interviewed J.S. According to J.S., DAVILA directed J.S. to assist with the paperwork for the acquisition New Behavior clinic from the previous owner and also assist in putting New Behavior in Diaz Martin's name. J.S. also assisted DAVILA with submitting the billing for New Behavior. J.S. identified DAVILA and not Diaz Martin as the real owner of New Behavior. DAVILA hired therapist A.F. to be a rendering provider at New Behavior initially and



paid her salary for working there. In October 2020, law enforcement interviewed a physician, B.K., whose information was provided to Medicaid as the supervising physician of New Behavior. B.K. stated that while he supervised other clinics, that he did not supervise New Behavior and that he did not know DAVILA.

New Behavior submitted false claims to Medicaid and received the following payments per month:

| Month   | Sum of Reimbursed Amount |
|---------|--------------------------|
| 2018 10 | $7,824.00                |
| 2018 11 | $22,240.00               |
| 2018 12 | $21,168.00               |
| 2019 01 | $27,504.00               |
| 2019 02 | $23,040.00               |
| 2019 03 | $23,040.00               |
| 2019 04 | $19,998.00               |
| 2019 05 | $41,615.00               |
| 2019 06 | $54,231.00               |
| 2019 07 | $152,013.00              |
| 2019 08 | $353,795.00              |
| 2019 09 | $509,489.00              |
| 2019 10 | $608,474.00              |
| 2019 11 | $516,006.00              |
| 2019 12 | $537,633.50              |
| 2020 01 | $532,709.50              |
| 2020 02 | $179,105.56              |

2020 03        $143,068.14

2020 04        $54,498.66

2020 05        $42,251.52

Federal law enforcement agents interviewed the top rendering provider, R.C., who was allegedly providing mental health treatment to many patients at New Behavior. That provider accounted for approximately $1,733,255 of all claims submitted by New Behavior. In September 2020, the provider indicated that she had never heard of New Behavior and indicated that he or she never provided any mental health treatment to anyone there. Many of the other claims submitted related to other providers were also suspicious because they were being "back-billed," i.e. being billed many days after the alleged treatment was provided.

R.C., the listed treatment provider mentioned above, recorded a call to DAVILA in which DAVILA denied any knowledge of how R.C. got linked as a provider in the Medicaid online portal to New Behavior.

Several Medicaid beneficiaries whose claims were submitted to Medicaid by New Behavior were interviewed. They confirmed to law enforcement that they never heard of New Behavior and never received the services that were billed. They also were shown photographs of the mental health treatment providers who allegedly treated them on behalf of New Behavior and they did not know these providers.

Of the $3.8 million received from Medicaid, New Behavior paid approximately $501,097 via check to DAVILA's company Max Medical Consulting, Incorporated in amounts ranging between $2,000 and $9,000 between in or around April 2019 and May 2020. New Behavior also sent money to other companies, shell companies, titled in the name of Joel Regino Diaz Martin, including Martin Catering Corp., Spirit Staffing Solutions, Corp., Martin Medical Assessment Corp. and Spirit Transport Solutions Corp. New Behavior sent money to several other individuals

and entities including Mirta's Catering Corp., Mainegra Office Solutions Corp., Manuel Diaz, and Martinez Transportation Solutions Corp.

A witness from an office supply store identified New Behavior's real owner as DAVILA and indicated that, in August 2020, DAVILA texted her copies of corporate debit cards for New Behavior (which listed Diaz Martin's name) and asked her to use them to process payment for office supplies provided to the clinics. Law enforcement has a copy of these text messages.

A witness J.C.M. stated to law enforcement in 2024 that he was offered $10,000 by DAVILA in order to find Diaz Martin housing in the United States in 2018 but that he was never paid by DAVILA.

After September 2020, Diaz Martin made several cash withdrawals of the Medicaid fraud proceeds, gave some of the money to DAVILA, and then Diaz Martin travelled back to Cuba. Some video surveillance shows Diaz Martin in a rental car conducting financial transactions related to the New Behavior bank accounts.

In September 2020, law enforcement went to Diaz Martin's last known address, 1116 Palm Avenue, Hialeah, Florida, an apartment building in Hialeah, Florida with ten bedrooms and a communal bathroom. Diaz Martin's landlord, O.V., told law enforcement that Diaz Martin was visited by DAVILA in an expensive blue car and then Diaz Martin stated to O.V. "that's the owner" after DAVILA left. O.V. stated that shortly after that incident Diaz Martin moved out and told O.V. that he was going to move to Homestead, Florida and work on a farm.

After this point, law enforcement attempted to find Diaz Martin but could not locate him. Cooperating witness#1 told law enforcement that Diaz Martin went back to Cuba. CW1 would testify that DAVILA admitted to CW1 that he was involved in New Behavior and that he was upset at Diaz Martin for trying to demand more money after the scheme began.



The Government has witness testimony and other evidence that establishes that DAVILA was the true owner of the approximately $1,715,236 in seized directly traceable fraud proceeds deposited in the six bank accounts listed below:

a. Approximately $810,830 seized on or about October 27, 2020, from TD Bank account no. 437-2370604;

b. Approximately $694,969.82 seized on or about October 27, 2020, from TD Bank account no. 438-2452624;

c. Approximately $52,779 seized on or about December 22, 2020, from Regions Bank account no. 0295891056;

d. Approximately $114,616 seized on or about November 17, 2020, from Truist Bank account no. 1100014350614;

e. Approximately $31,400 seized on or about November 17, 2020, from Truist Bank account no. 1100014350908;

f. Approximately $10,642.26 seized on or about February 23, 2021, from Truist Bank account no. 1000271891649.

These bank accounts were opened by the nominee owner, Joel Regino Diaz Martin, at DAVILA's direction and Diaz Martin gave over control of some of these bank accounts to DAVILA.

The parties agree that the actual/intended loss related to New Behavior is greater than $3,500,000. Medicaid paid New Behavior $3,869,703 on the claims submitted.

The Government can also offer Medicaid claims data, bank records, corporate records, witness testimony, and other evidence which supports this factual proffer. This factual proffer is not a recitation of all facts that could be proved if this matter were to proceed to trial but just a recitation of the facts deemed sufficient for this guilty plea to Count 2.



The Government has additional evidence it could offer on Count 1, as outlined in the co-defendant's factual proffers, that it will provide to the Court and the U.S. Probation Office pursuant to the terms of the plea agreement.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: June 14, 2024   By: _____
TIMOTHY J. ABRAHAM   MARC CANZIO
SPECIAL ASSISTANT UNITED STATES ATTORNEY

Date: May 6, 2024   By: _____
JOSE QUINON
ATTORNEY FOR THE DEFENDANT

Date: Mayo 6, 2024   By: _____
JOSE DAVILA NUNEZ
DEFENDANT