UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

*Plaintiff,*

vs.   CASE NO: 23-20390-CR-WILLIAMS

JOSE DAVILA NUNEZ, et al.

*Defendant.*
_____/

**DEFENDANT DAVILA'S REPLY TO [DE # 105-1] PROBATION'S RESPONSE**

Defendant, JOSE DAVILA NUNEZ ("Mr. Davila"), through undersigned counsel, and pursuant to Rule 32, Fed. R. Cr. P., hereby files this reply to the Probation Officer's response in the Addendum to the Presentence Report. This reply has been filed to further clarify the disagreement between Probation and the parties as to the appropriate amount of loss for sentencing purposes.[1]

**The Objections to the PSR**

As an initial matter, we recognize that Mr. Davila's objections to the PSR's paragraphs 3, 35, and 41 have been resolved by the [DE # 105-1] Addendum to the Presentence Report.

However, there remain unresolved objections – more specifically, objections to paragraphs 104, 105, 109, 113, 153, and 154 – which resolution hinges upon a determination of loss amount. So that a ruling by the Court on the amount of loss should resolve the six remaining PSR objections. In the balance, hang three levels under the Guidelines, making this a crucial ruling for Mr. Davila (and the Government, which agrees with Mr. Davila's position).

---

[1] The Government agrees with Mr. Davila's objection as to the amount of loss, so that here both parties disagree with probation.

Page **1** of **6**
**JOSE M. QUIÑON, P.A.**
*75 Valencia Avenue, Suite 800, Coral Gables, FL 33134 Tel. (305) 858-5700. Fax (305) 358-7848 jquinon@quinonlaw.com*

Below, we explain the methodology employed by the Government and Mr. Davila to arrive at their joint conclusion that the correct loss amount was $3,869,703. We follow that discussion with an explanation of how Probation arrived at its conclusion that $14,559,704 should be the loss amount. And we end concluding that the position shared by the Government and Mr. Davila is the more appropriate under the Guidelines and should govern at Mr. Davila's sentencing.

**The Government's and Mr. Davila's Loss Calculations**

After extended and arduous negotiations, the Government and Mr. Davila reached a plea agreement whereby Mr. Davila pleaded guilty to Count 2. As part of the plea agreement, the parties stipulated to various Guidelines' factors, including a stipulated loss amount of $3,869,703.[2] In reaching that stipulation, the parties considered that Count 2 (the count of conviction) charged a *conspiracy to commit health care fraud* involving New Behavior. While Mr. Davila and his two codefendants were charged in Count 1 with *a separate and distinct kickback conspiracy* involving different entities: specifically, Advance Community, Davila Medical Center, and Larkin Behavior.

Under the relevant conduct provisions of the Guidelines, Mr. Davila should be held accountable for all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by him and, in the case of a jointly undertaken activity, all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity will form the basis of determining relevant conduct **"that occurred during the commission of the <u>offense of conviction</u>, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."** § 1B1.3(a)(1)(A) and (B) (emphasis added). And that is exactly what the Government and Mr. Davila have done here. Stated differently, Mr. Davila has been held accountable for $3,869,703 in loss amount resulting from his own conduct,

---

[2] The loss attributable to Counts 3-7 was included in the stipulated $3,869,703 amount of loss.

as well as all "jointly undertaken criminal activity" involving Count 2, the **"offense of conviction."** *Id*. This is exactly what the Guidelines require. Accordingly, it is respectfully submitted the loss amount proposed by Probation is mistaken.

**Probation's Calculations**

Probation in its calculations comes out to a loss amount of $14,559,704. It does so by aggregating the following: (a) $3,869,703, which includes the loss attributable to *New Behavior* caused by the *fraud conspiracy* reflected in Count 2, the offense of conviction. We agree that this loss attribution is correct; (b) $7,215,312 for loss attributable to *Davila Medical Center's* kick back conspiracy in Count 1. This should not be included as loss because it is *a separate and distinct conspiracy* and **not the "offense of conviction."**; (c) $3,443,736 for loss attributable to Advance Community's kick back conspiracy in Count 1. This should not be included as loss because it is *a separate and distinct conspiracy* and **not the "offense of conviction."**; (d) and $30,950 for loss attributable to Larkin Behavior's kick back conspiracy in Count 1. Also should not be included as loss because it is *a separate and distinct conspiracy* and **not the "offense of conviction."** In sum, Probation has impermissibly piled on a total of $10,689,998 in losses derived from Count 1, a separate and distinct kickback conspiracy. That cannot be allowed because § 1B1.3(a)(1)(A) and (B), clearly state that the loss must be limited to relevant conduct **"that occurred during the commission of the <u>offense of conviction</u>, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."** § 1B1.3(a)(1)(A) and (B) (emphasis added).

But even if Probation was correct (and it is not) in contending that losses attributable to Count 1's kick back conspiracy, which is **not an offense of conviction**, should be included against Mr. Davila, Probation would still be wrong in its Guidelines calculations. That is so, because the

Count 2, is a *fraud* count, and losses are computed under § 2X1.1(a) and § 2B1.1(a)(2). So that loss is dictated by the reimbursement received (actual loss), or the amount billed (intended loss). In this case everyone agrees that amount is $3,869,703. In contrast, kickback offenses are scored by § 2B4.1, a totally separate guideline. And § 2B4.1 uses "improper benefit" rather than ("intended" or "actual") "loss" to score kickback offenses. Improper benefit is measure by the value of the benefit received, which in this case is much lower than actual or intended loss.

More to the point, when Mr. Davila's codefendants – Luis Alberto Rivero and Jesus Rojas – were sentenced for their Count 1 kick back crimes, their guidelines sentence were scored under § 2B4.1, and their "improper benefit" came out to: (a) Davila Medical Center, improper benefit $1,587,368; (b) Advance Community, improper benefit $757,622; and Larkin Behavior, improper benefit $273,002. A total improper benefit of **$2,617,992**[3]. But when Probation erroneously included Count 1's harm as relevant conduct[4], it compounded its error by treating the "improper benefit" of the kickback offenses (total $2,617,992) as if it were "loss," and applied the reimbursed amount (actual loss), which total **$10,689,998**. In other words, Probation conflated the (Count 1) *kickback* offenses with the (Count 2) *fraud* offense, and thereby caused an impermissible increase

---

[3] Assuming for the sake of argument that this $2,617,992 Count 1 "improper benefit" could be added as relevant conduct to the $3,869,703 "loss" of Count 2, the total would be $6,487,695. This would result in adding 18 levels under § 2B1.1(J) (the loss table) rather than adding 20 levels as proposed by Probation. Furthermore, it would result in an enhancement of only 2 levels under § 2B1.1(b)(7) rather than adding 3 levels as proposed by Probation in the PSR. In conclusion, even taking into consideration relevant conduct, as proposed by Probation, a correct interpretation of the Guidelines shows the Government's and Mr. Davila's proposed Guidelines calculations are correct and should control at sentencing.

[4] As previously noted, Count 1 is a *kickback conspiracy* that is scored per § 2B4.1 ("improper benefit"). The harm in Count 1 cannot be treated or score the same as the Count 2, which is a *fraud conspiracy,* and is scored per § 2X1.1(a) and § 2B1.1(a)(2). Nor can the harm caused by Count 1 be considered as relevant conduct because § 1B1.3(a)(1)(A) and (B) clearly admonishes that to do so, the criminal activity must have "occurred during the commission of the **offense of conviction**, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." And that did not occur here. Thus, it cannot be considered relevant conduct.

of three levels in the guidelines. In conclusion, the appropriate guidelines are as computed by the Government and Mr. Davila, which yielded $3,869,703, as the amount of loss in this case.

### Conclusion

The Government's and Mr. Davila's loss computation in this case adheres to the Sentencing Guidelines. Probation's calculations, on the hand, mistakenly conflate "improper benefit" caused by *kickbacks* under § 2B4.1 and "loss" caused by *fraud* under § 1B1.3(a)(1)(A) and (B). Probation's calculations therefore are erroneous and cause a misrepresentation in the loss amount attributed to Mr. Davila. Accordingly, the Guidelines for this case should be the following:

| | | |
|---|---|---|
| **103.** | **Base Offense Level:** | **6** |
| **104.** | **Specific Offense Characteristics:** | **+18** |
| **105.** | **Health Care Program (Penalty):** | **+2** |
| **107.** | **Adjustment for Role in the Offense:** | **+3** |
| **109.** | **Adjusted Offense Level (Subtotal):** | **29** |
| **111.** | **Acceptance of Responsibility:** | **-2** |
| **112.** | **Additional One Level Decrease:** | **-1** |
| **113.** | **Total Offense Level:** | **26**   **(63-78 months)** |

And the Government and Mr. Davila have agreed to jointly recommend to the Court that a sentence at the bottom of the Guidelines be imposed; that is, **63 months**.

Respectfully submitted,

**JOSE QUINON, P.A.**
*Attorney for Jose Davila Nunez*
75 Valencia Ave., Suite 800
Coral Gables, Florida 33134
Tel.: 305-858-5700
Fax: 305-858-7848
Cell (786) 348-3778

BY: /s/ *Jose Quinon*
Jose M. Quinon
Fla. Bar No.: 201944

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the above and foregoing Defendant Davila's Reply to [DE #105-11] Probation's Response. was furnished via CM/ECF to all counsel of record and Probation this 4th day of October 2024.

BY: /s/ *Jose Quinon*
Jose M. Quinon