UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.                                                        CASE NO: 23-20390-CR-WILLIAMS

JOSE DAVILA NUNEZ, et al.

    *Defendant.*
_____/

### DEFENDANT JOSE DAVILA NUNEZ'S
### UNOPPOSED MOTION FOR DOWNWARD VARIANCE

Defendant, JOSE DAVILA NUNEZ ("Mr. Davila"), through undersigned counsel, and pursuant to Rule 32, Fed. R. Cr. P., hereby files his *Unopposed* Motion for Downward Departure.

## I. INTRODUCTION

On September 28, 2023, Mr. Davila was indicted and charged in six counts of a seven-count indictment. He was charged in Count 1 with conspiracy to pay kickbacks, Count 2 with conspiracy to commit healthcare fraud and wire fraud, and Counts 3-7 with substantive counts of healthcare fraud. DE # 3. On September 29, 2023, Mr. Davila made his first court appearance before Magistrate Judge Alicia M. Otazo-Reyes. Thereafter, on October 4, 2023, Mr. Davila was enlarged on a stipulated personal surety bond signed by his wife; a $150,000, 10% bond. DE # 16. Magistrate Judge Jacqueline Becerra approved the bond and released Mr. Davila that same day. He has since abided by all bail conditions.

On June 14, 2024, pursuant to a plea agreement, Mr. Davila appeared before the Court and changed his plea to guilty. DE # 75 and 76. He entered a plea of guilty to Count 2 of the Indictment, which charged him with Conspiracy to Commit Health Care and Wire Fraud. DE # 76. The

Page **1** of **8**

JOSE M. QUIÑON, P.A.
*75 Valencia Avenue, Suite 800, Coral Gables, FL 33134 Tel. (305) 858-5700. Fax (305) 358-7848 jquinon@quinonlaw.com*

Government agreed to dismiss Counts 1 and 3-7 at sentencing. Mr. Davila, as part of the plea agreement, agreed to a forfeiture judgment in the sum of $3,869,703.88.

Mr. Davila's plea agreement contains various Guidelines' stipulations. As relevant here, it stipulates that pursuant to § 2B1.1(b)(1)(J), the loss amount is greater than $3,500.00 but less than $9,500.00, resulting in an 18-level increase. DE # 76, ¶ 9(b). And it stipulates that the adjusted offense level – before acceptance of responsibility – is Level 29. *Id*. at ¶ 9(e). Thus, after receiving acceptance of responsibility, Mr. Davila would end up at Level 26, with a recommended range of 63 to 78 months of imprisonment. Furthermore, the parties stipulated that "they will jointly recommend that the defendant be sentenced to a term of imprisonment of 63 months." DE # 76 ¶ 10.

Consistent with the terms of the plea agreement, at sentencing both the Government and Mr. Davila will "jointly recommend that [Mr. Davila] be sentenced to a term of imprisonment of 63 months." If the Court follows the recommendation of the parties, Mr. Davila will withdraw this motion for a downward variance. On the other hand, if the Court decides not to follow the parties' recommendation for a 63-month sentence of imprisonment, then we ask the Court to entertain this motion for downward variance. If the Court grants a downward variance, consistent with the plea agreement, Mr. Davila will not ask for a downward variance sentence that is less than 63 months of imprisonment.

## II.  MR. DAVILA'S MERITS A DOWNWARD VARIANCE

In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court pointed out that the Sentencing Guidelines serve as a "starting point and initial benchmark," but the district court has authority, based on its "individualized assessment" of the facts, to weigh the factors listed in section 3553(a) and fashion a sentence outside the guidelines. *Id*. at 49-51. After the guidelines

**JOSE M. QUIÑON, P.A.**
*75 Valencia Avenue, Suite 800, Coral Gables, FL 33134 Tel. (305) 858-5700. Fax (305) 358-7848 jquinon@quinonlaw.com*

calculations are determined "the District Court may impose a more severe or more lenient sentence as long as the sentence is reasonable." *United States v. Crawford*, 407 F.3d 11174, 1179 (11th Cir. 2005). The sentencing judge must "'consider every convicted person as an individual and every case as a unique study in [] human failings.'" *Id*. at 52 (quoting from *Koon*, 518 U.S. at 113.) The goal is to impose a sentence that is reasonable, meaning that is sufficient, but not greater than necessary. *See* §3553(a). [1]

In Mr. Davila's case, a strict application of the advisory guidelines proposed by Probation produces a sentence that is "greater than necessary" under § 3553(a) factors. Here the § 3553(a) factors tilt in favor of Mr. Davila, and a sentence of 63-months imprisonment is reasonable and appropriate.

**(a) Discussion of the 18 U.S.C. § 3553(a) factors**

*(1) The Nature of the Offense and History and Characteristics of the Defendant*

Mr. Davila is a 51-year-old man. This is his first and only encounter with the criminal justice system. He migrated from Cuba to the United States, and he is now a U.S. citizen. His

---

[1] § 3553(a) lists the following seven factors that the court must consider in determining the sentence to be imposed:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for … [inapplicable categories of offenses to the instant case];
(5) any pertinent policy statement …[none applicable to the instant case];
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

personal history reveals that he was raised in a humble socio-economic environment. His father, who passed away from liver cancer in 2012, nevertheless managed to provide for the essentials such as food, electricity and running water while the family lived in Cuba. PSR at ¶ 124. But throughout, Mr. Davila's family ties have always shown to be strong, as reflected by Mr. Davila's parents who were legally married for more than 50 years.

Mr. Davila is a man whose life centers around his family. He has been happily married to Mirelys Valdes-Espinosa for almost twenty years. Out of this marriage three children have been born: Kevin, age 15; Kaley, age 13; and Angelina, who is 16 months old. In addition, Mr. Davila has another child – son, Christian, who is twenty-four years old and resides with Mr. Davila. In a character letter submitted by Highpoint Academy for purposes of sentencing, Alicia A. Casanova, the Principal, wrote about her observations regarding how Mr. Davila always took care of his children. She explains that the two teenagers, Kevin and Kayler, have attended Highpoint, and that Mr. Davila "has been very involved in the life of his sons. He drops them off and picks them up from school almost every day. He attends teacher meetings and school events and is always attentive to their needs." DE #112. Mr. Davila's oldest son also wrote to share his sentiments about his father. He speaks glowingly about his father and the qualities his father embodies and has passed down onto him. He also remarks on his father's "dedication to his family and community. DE # 112. In addition, Mr. Davila's sister and his mother have written to the Court to share how Mr. Davila always has been attentive and caring towards his family. In fact, the sister observed that Mr. Davila has been "like a father" to her 15-year-old son, whose biological father is absent from his life. She also shared how Mr. Davila has taken care of his mother, Digna Nuñez, who has been diagnosed and suffers from severe depression and anxiety. Mr. Davila's wife, Mirelys, also

Page **4** of **8**

**JOSE M. QUIÑON, P.A.**
*75 Valencia Avenue, Suite 800, Coral Gables, FL 33134 Tel. (305) 858-5700. Fax (305) 358-7848 jquinon@quinonlaw.com*

wrote a letter attesting that to Mr. Davila "family comes first," and he has been "an impeccable husband, father, son, brother, uncle and friend." *Id*.

Although the nature of the offense is concededly serious, Mr. Davila, however, has owned up to his wrongdoing and, to his credit, has begun to make up for his prior conduct. He has shown that with the unflagging support of his family, who provide a solid foundation, he will redeem himself.

### (2)  The Purpose of Sentencing

The Court must weigh all the § 3553(a) factors to arrive at a sentence that is "sufficient but not greater than necessary." Taking into consideration the circumstances of the offense and the sentences meted out to the co-defendants, the Government and Mr. Davila submit that in this case a 63-months sentence is certainly "sufficient but not greater than necessary."

### (3)  The Kinds of Sentences Available

Mr. Davila understands and accepts that his sentence will entail some prison time. It's respectfully submitted that the parties' recommendation of 63 months of imprisonment would be a reasonable sentence.

### (4) and (5)  The Advisory Sentencing Guidelines and Policy Statements

These two sections speak to policy matters that are not specifically directed to the resolution of issues pertinent to this case.

### (6)  The Need to Avoid Unwarranted Sentencing Disparities

The Sentencing Guidelines warns about the "need to avoid sentence disparities." U.S.S.C. § 3553(a)(6); *see also Hughes v. United States*, 584 U.S. 675 (2018). Here, co-defendant Jesus Rojas received a sentence of *20 months of imprisonment*, followed by three years of supervised release, and a forfeiture judgment (and restitution amount) of $273,000. DE # 81. And co-

defendant Luis Rivero was sentenced to *29 months of imprisonment*, followed by three years of supervised release, and a forfeiture judgment of $1,096,679 – and a restitution amount of $2,617,992.00. DE # 96.

The Government maintains that Mr. Davila holds a higher degree of culpability when measured against his codefendants. For this reason, the Government and Mr. Davila have jointly recommended a sentence of 63 months of imprisonment, which more than doubles the sentence of codefendant Luis Rivero and more than triples the sentence of codefendant Jesus Rojas. Also, Mr. Davila agreed to a forfeiture judgment of $3,869,703.88, which is much higher than the combined forfeiture judgments of codefendants Rivero and Rojas. Thus, the Government's and Mr. Davila's sentencing recommendation provides a stiffer but reasonable sentence that avoids sentence disparities.

*(7)  **The Need to Provide Restitution to Any Victims of the Offense***

Mr. Davila has agreed to a forfeiture judgment of $3,869,703.88. He believes he will be able to fully pay the forfeiture judgment. First, he will be credited the sum of $1,715,237.08, which presently is deposited in various banks – as noted in the Indictment and the Preliminary Order of Forfeiture. DE ## 3 and 91. This leaves a remaining debt of $2,154,466.80, which Mr. Davila believes will be satisfied with the sale proceeds from real property listed in the Indictment. To this end, Mr. Davila and the Government entered into an agreement whereby the properties already have been listed for sale by a commercial real estate broker.

Mr. Davila hopes that through the process of "restoration," which is a Department of Justice process, the funds paid towards forfeiture may be utilized to pay restitution to the victim in this case. Mr. Davila recognizes this is a discretionary DOJ decision, but it has happened with

Page **6** of **8**

**JOSE M. QUIÑON, P.A.**
*75 Valencia Avenue, Suite 800, Coral Gables, FL 33134 Tel. (305) 858-5700. Fax (305) 358-7848 jquinon@quinonlaw.com*

some regularity in many cases that have been prosecuted here in the U.S. District Court for the Southern District of Florida.

The law in this Circuit permits downward Sentencing Guidelines' departures in cases of extraordinary restitution. *United States v. Kim*, 364 F.3d 1235 (11th Cir. 2004). The Court may grant a downward departure "'*if the factor [restitution] is present to an exceptional degree or in some other way makes the case different from the ordinary case.*'" *Id*. at 1240 (quoting *Koon v. United States*, 518 U.S. 81, 95-96 (1996) (emphasis added). While this case does not involve paying extraordinary restitution, it does involve paying extraordinary forfeiture, which through the process of "restoration" may ultimately result in the payment of $3,869,703.88 towards restitution. It is humbly submitted that this factor should be considered by the Court in granting a downward variance to the level recommended by the Government and Mr. Davila – that is, 63 months of imprisonment

### III.  CONCLUSION

Mr. Davila respectfully requests (if the Court does not accept the Guidelines calculations he and the Government submitted) for a downward variance to 63 months of imprisonment.

>Respectfully submitted,
>*s/Jose M. Quinon*
>Jose M. Quinon
>
>JOSE M. QUINON, P.A.
>75 Valencia Avenue, Suite 800
>Coral Gables, Florida 33134
>Tel. (305) 858-5700
>Fax (305) 358-7848
>Cell (786) 348-3778
>Email: jquinon@quinonlaw.com

Page **7** of **8**

**JOSE M. QUIÑON, P.A.**
*75 Valencia Avenue, Suite 800, Coral Gables, FL 33134 Tel. (305) 858-5700. Fax (305) 358-7848 jquinon@quinonlaw.com*

## CERTIFICATE OF SERVICE

 I HEREBY CERTIFY that the foregoing Defendant Davila's Motion for Downward Variance was filed on October 6, 2024, via PACER, which will serve a copy on all concerned parties.

             *s/Jose M. Quinon*
             Jose M. Quinon

Page **8** of **8**

**JOSE M. QUIÑON, P.A.**
*75 Valencia Avenue, Suite 800, Coral Gables, FL 33134 Tel. (305) 858-5700. Fax (305) 358-7848 jquinon@quinonlaw.com*